IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAN L. VARGAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-21-594-STE |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits (DIB) under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____).

The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c). The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I.  PROCEDURAL BACKGROUND

Plaintiff applied for DIB under Title II of the Social Security Act on May 22, 2019, alleging disability beginning May 5, 2013. Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for DIB. Following an administrative

hearing, (TR. 28-48), an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 16-24). The Appeals Council denied Plaintiff's request for review, (TR. 1-4), making the decision of the ALJ the final decision of the Commissioner.

As the Commissioner notes, the ALJ properly considered the period between May 2013, Plaintiff's alleged onset date, and December 31. 2018, the date her insured status for DIB expired. Plaintiff was 26 years old when her alleged disability began, and 32 years old on December 31, 2018. Although Plaintiff contends that she was disabled by her severe impairments—IBS and chronic sinusitis—she stated in her adult function report that she quit working on May 7, 2013, because she was pregnant with the first of her two children. (TR. 150). Plaintiff had completed two years of college and has had special training as a phlebotomist.

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity after her alleged onset date of May 5, 2013, through her date last insured, December 31, 2018. (TR. 17).

At step two, the ALJ determined Plaintiff has two severe impairments: irritable bowel syndrome and chronic sinus infection. (TR. 17).

At step three, the ALJ found that Plaintiff's impairments, considered individually or in combination, did not meet or medically equal any of the presumptively disabling

impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 18). The ALJ considered Listing 5.06 and determined Plaintiff did not meet the criteria for inflammatory bowel disease. Likewise, the ALJ determined Plaintiff did not meet the criteria for Listing 8.04, chronic infections of the skin or mucus membranes.

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform light work, limited only by her ability to reach no more than frequently with her right arm. (TR. 19). At the second phase of step four, the ALJ concluded Plaintiff could perform her past relevant work as a phlebotomist, a semiskilled job requiring light exertional capacity, and as a teller, a skilled job also requiring light exertional capacity. (TR. 22).

Despite finding that Plaintiff could perform her past relevant work, the ALJ continued through step five of the sequential evaluation. The ALJ considered Plaintiff's age,[1] education, work experience and RFC and concluded there were additional jobs existing in significant numbers in the national economy that she could perform. At the administrative hearing, the vocational expert (VE) identified three such jobs from the *Dictionary of Occupational Titles* (DOT): Office Helper, (DOT #239.567-010, a light, unskilled job with 64,000 such jobs existing in the national economy); Furniture Rental Clerk (DOT #295.357-018, a light, unskilled job with 50,500 jobs existing in the national

---

[1] At all times pertinent to this decision, Plaintiff was a "younger individual." *See* 20 C.F.R. 404.1563. Generally, the younger an individual is, the more likely that individual can adjust to work other than his or her past relevant work. *See* Medical-Vocational Guidelines (the grids) 20 C.F.R. Part 404, Subpart P, Appendix 2.

3

economy); and Cashier, (DOT #211.462-010, a light, unskilled job with 806,000 jobs existing in the national economy). (TR. 23).[2]

## III. ISSUES PRESENTED

Plaintiff contends the ALJ erred in failing to apply the correct legal standards when analyzing the medical opinions of record; in failing to properly assess the consistency of Plaintiff's complaints with the evidence of record; and in failing to perform a proper determination at steps four and five of the sequential evaluation process.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).

Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation

---

[2] The ALJ noted the VE's testimony was not entirely consistent with the information in the DOT because the DOT does address reaching with one extremity. Nevertheless, the ALJ accepted the testimony of the VE based on her education and experience. (TR. 23).

4

marks omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

Nevertheless, the Court must reverse decisions if the ALJ has simply picked out and relied on evidence that supports his conclusion without discussing relevant evidence to the contrary.

## V.   ANALYSIS

### A.   Evaluation of Subjective Complaints and Medical Opinions

In related assignments of error, Plaintiff contends the ALJ failed to apply the proper legal standards, as set forth in the Act and regulations, in analyzing "medical opinions of record." (ECF No. 21:3-8). She further contends the ALJ did not properly analyze the consistency of her subjective complaints with the medical record. (ECF No. 21:8-12).

Plaintiff explains that treating physician opinions are no longer entitled to controlling weight after a change in the rules effective March 27, 2017. Nevertheless, she argues, the rule change "elevates the factors of 'supportability' and 'consistency' to the top of the hierarchy of the factors for consideration" while requiring an ALJ to also consider "relationship with the claimant" and "specialization." (ECF No. 21:4).

But thereafter, Plaintiff does not point to any medical opinions from treating sources regarding the functional limitations caused by her severe impairments. In fact,

Plaintiff acknowledges the only medical opinions in the record are those rendered by state agency doctors who reviewed the evidence of record and found insufficient evidence from the relevant period to support a finding of significant functional limitations resulting from Plaintiff's alleged impairments. (ECF No. 21:5); (TR. 21). The ALJ found the opinions to be persuasive. (TR. 21). Plaintiff contends the ALJ's decision is defective because the state agency physicians' opinions contain no RFC and no assessment of functional limitations. This criticism does not, however, amount to legal error. It is well established that there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. *Chapo v. Astrue*, 682 F.3d 1285, 1288–89 (10th Cir. 2012). "'[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.'" *Id.* (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004) (following 20 C.F.R. § 416.927(e)(2) and SSR 96–59, 1996 WL 374183, at *5); *see also* 20 C.F.R. § 404.1546(c).

Plaintiff contends that in the absence of any medical opinion with an RFC, the ALJ had the duty to "develop the evidence" and "consider 'arguments' both for and against a finding of disability.'" (ECF No. 21:6). In some cases, an ALJ does bear an affirmative duty to further develop a social security record, *See Lamb v. Barnhart*, 85 Fed App'x. 52, 57 (10th Cir. 2003) ("The ALJ must ensure that a sufficient record exists to evaluate [the claimant's] exertional and nonexertional limitations.") (Citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). Although this characterization of an ALJ's

duty is technically correct, Plaintiff does not suggest how, in this case, the ALJ could have further developed the record with relevant medical information, considering that Plaintiff's application for benefits was filed after her date last insured and the alleged onset date was six years prior to the ALJ's decision. Any consultative examiner would be able to describe only Plaintiff's current impairments. Because such an examination would shed little light on Plaintiff's impairments during the relevant period, the ALJ was not duty-bound to further develop the record.

Moreover, an ALJ's duty to further develop a social security record is not triggered where sufficient evidence exists for him to make a disability determination. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008). In this case, the ALJ examined and discussed the medical records and found infrequent treatment for severe symptoms of IBS during the relevant period. Thus, the ALJ concluded the lack of significant medical care suggested Plaintiff's symptoms were less severe than she alleged. The ALJ noted there was a significant history of treatment before Plaintiff's alleged onset date—during a time when she was actually working, but no record of emergency treatment for IBS between April 2011 and January 2013, after which there were no such records until August 2017. (TR. 20). In August 2017, Plaintiff sought treatment for nausea, vomiting and diarrhea. (TR. 352-364). She did not, however, report difficulty concentrating. Plaintiff exhibited right lower quadrant tenderness. A colonoscopy with biopsy did not reveal significant findings. (TR. 357-358, 361).

As for her sinus infections, the ALJ acknowledged Plaintiff was diagnosed with a history of sinusitis through her date last insured. (TR. 22). Plaintiff underwent a CT scan of the paranasal sinuses on June 5, 2018. The results revealed three mucus retention cysts in the left maxillary sinus with no occlusion of the left ostiomeatal complex and minimal thickening in the right sphenoid sinus, mild narrowed right ostiomeatal complex and deviated septum to the right. However, the scan also noted only "mild changes . . . with no evidence for acute sinusitis." (TR. 349). Records show Plaintiff underwent surgery for chronic sinus infections in 2019, after her date last insured. (TR. 293-311).

Plaintiff also faults the ALJ for imposing a limitation on reaching with her right upper extremity and failing to impose a limitation on her ability to concentrate. According to Plaintiff, the medical evidence does not support a limitation in the ability to reach. If the ALJ's finding in this respect was error, it was harmless. The ALJ does not commit reversible error by electing to temper the resulting findings based on the evidence for the claimant's benefit. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). As for failing to impose a limitation on Plaintiff's ability to concentrate, this, too, would be harmless error, if it were error at all. The record is devoid of evidence that Plaintiff ever sought treatment from mental health providers. Moreover, all the alternative jobs the ALJ found Plaintiff could perform were unskilled jobs. As the Commissioner notes, "unskilled occupations are the least complex types of work" and require "little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a); SSR 82-41, 1982 WL 31389. Even though

no mental limitations were proven, the ALJ relied only on unskilled jobs at step five to show that Plaintiff could perform a significant number of jobs in the national economy. Thus, Plaintiff has failed to show harm from the ALJ's finding no impairment in her concentration.

The ALJ properly relied on the paucity of medical records in determining that Plaintiff's symptoms were not as severe as she stated. *See White v. Berryhill*, 704 F. App'x 774, 778 (10th Cir. 2017) (noting that "failure to seek medical treatment is a proper factor" to consider in evaluating a claim of disabling limitations). As the Commissioner notes, Plaintiff was covered by health insurance and received medical care for other concerns—including two childbirths, as well as imaging studies, laboratory tests, and procedures for other relatively minor conditions—during the relevant period (Tr. 322-326, 364-498). The limited evidence of severe exacerbations of the claimant's impairments suggests her conditions were not as severe as she testified. And contrary to Plaintiff's assertion, the ALJ did consider the daily activities Plaintiff reported including her ability to care for two small children, to prepare meals, clean the floor, launder clothes, wash dishes, shop, drive, travel, camp, help her daughter with homework, and attend family and churchy gatherings. (TR. 20, 39-40, 226-227).

Additionally, the ALJ found some of the physical abilities required to perform Plaintiff's daily activities were the same as those necessary to find and maintain employment. The ALJ concluded that, given the claimant's allegations of totally disabling impairments, one might expect to see some indication in the treatment records of

restrictions placed on Plaintiff by her treating doctor. As noted, however, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or has physical limitations greater than those the ALJ included in the RFC. (TR. 20). Plaintiff's first two assignments of error lack merit.

### B.     The ALJ's Decision at Steps Four and Five

Plaintiff's contention that the ALJ's determinations at steps four and five were faulty circles back to her previous arguments. Plaintiff asserts that the ALJ could not have propounded a proper hypothetical question to the VE because the ALJ's RFC determination did not include accommodation for Plaintiff's alleged pain, IBS, and concentration problems. This Court finds no error in the ALJ's decision at steps four and five.

Plaintiff contends that the agency physicians found Plaintiff's allegation of pain to be credible. That finding, Plaintiff argues, required the ALJ to account for her pain by inserting specific limitations into the RFC. In fact, however, the State agency physician who initially examined the medical records concluded that those records contained insufficient medical evidence to support a finding of severe physical medically determinable impairments resulting in significant functional limitations and lasting at least a continuous 12 months during the relevant period. (TR. 65). This finding was affirmed on reconsideration by a second disability adjudicator. (TR. 67). As discussed in greater detail *supra* at 8-9, Plaintiff's contention that she suffered "concentration and pace" limitations caused by her IBS is not supported by substantial evidence. In addition

to the lack of evidence demonstrating frequent exacerbations of her IBS during the relevant period, the ALJ also noted that Plaintiff's symptoms prior to her 2013 alleged onset date appear to be present at approximately the same level of severity as when she stopped working because of her first pregnancy. Based on that finding, the ALJ deduced that, because Plaintiff's IBS did not prevent her from working during the two years before her alleged onset date, she would also be able to work after her alleged onset date, but for her pregnancy. (TR. 20).

Substantial evidence supports the ALJ's step four and step five determinations. Accordingly, the Commissioner's decision is affirmed.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision. Judgment will be entered in favor of Defendant.

ENTERED on May 24, 2022.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE